FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ FEB 21 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARIO FAGONE,

                       Plaintiff,

    -against-

MICHAEL J. ASTRUE, Commissioner of Social Security,

                     Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-3288 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiff Mario Fagone brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that he is not disabled and therefore not entitled to Disability Insurance Benefits ("DIB"). Fagone argues that the SSA made four errors in denying his application for benefits: that it (1) failed to properly evaluate the opinion of his treating physician; (2) failed to properly evaluate his residual functional capacity; (3) failed to consult a vocational expert to determine the effect of certain of his limitations, including his obesity, on his ability to perform work; and (4) failed to properly evaluate his credibility. The Commissioner of Social Security has filed a motion, and Fagone has filed a cross-motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the court agrees with Fagone that the ALJ failed to properly evaluate his treating physician's opinion, the Commissioner's motion is DENIED, Fagone's motion is GRANTED, and this case is REMANDED to the SSA for further proceedings.

**I.    BACKGROUND**

    Fagone was born on July 6, 1971. (Administrative Rec. (Dkts. 14, 14-1) ("Rec.") at 146.) He has previously worked as a telecommunications cable installer and field technician. (Id.) On

1

October 23, 2003, when he was working as a field technician, Fagone was injured while bending to lift an aluminum ladder from under a tool cart. (Id. at 288.) Fagone experienced severe pain, and was forced to leave work temporarily. (Id.) He was eventually terminated from his job as a field technician, and has not worked since May 31, 2005. (Id. at 146.)

On July 16, 2009, Fagone filed an application for DIB, claiming that he had been disabled since May 31, 2005, due to a lower back injury, bilateral leg pain, muscle weakness, atrophy in the legs, and depression. (Id.) The SSA denied his application on October 27, 2009. (Id. at 18.)

Fagone requested a hearing on his application before an Administrative Law Judge ("ALJ"); ALJ Robert C. Dorf held a hearing on the application on October 4, 2010. (Id. at 18, 25.) Fagone was represented at the hearing and gave testimony. (Id. at 18.) On November 5, 2010, the ALJ issued a written decision concluding that Fagone was not disabled within the meaning of the Social Security Act. (Id. at 18-25.)

Fagone requested that the SSA Appeals Council review the ALJ's unfavorable decision. (Id. at 146.) The Appeals Council denied Fagone's request for review on May 26, 2011 (id. at 5-7), and again on June 23, 2011 (id. at 1-4), rendering the ALJ's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On July 8, 2011, Fagone filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the SSA's decision that he was not disabled and therefore not entitled to DIB. (See Compl. (Dkt. #1).) Fagone and the Commissioner cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Def. Mot. (Dkt. 9); Def. Mem. (Dkt. 10); Pl. Cross-Mot. (Dkt. 11); Pl. Mem. (Dkt. 12); Def. Reply (Dkt. 13).)

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).

### B.  Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by

3

evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

C.  **Determination of Disability**

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" ... of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the

claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id.

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id.

## III. DISCUSSION

Fagone argues that the ALJ erred in concluding that he was not disabled under the Social Security Act. (Compl. ¶ 13.) He does not dispute the first three steps of the ALJ's five-step analysis: (1) that Fagone had "not engaged in substantial gainful activity since May 31, 2005";

(2) that Fagone suffered from degenerative disc disease and obesity, both "severe impairments"; and (3) that Fagone did not suffer from an impairment or combination of impairments that met or medically equaled the Listing of Impairments. (Rec. at 20.)

At step four, the ALJ found that Fagone had "the residual functional capacity to perform a full range of sedentary work," including "lifting and carrying up to 10 pounds; standing and/or walking for up to two hours in an eight hour day; and sitting and working for up to six hours in an eight hour day." (Id. at 23-24.) Based on that residual functional capacity, the ALJ found at step four that Fagone was "unable to perform any past relevant work," but, at step five, that there were "jobs that exist[ed] in significant numbers in the national economy that [Fagone] c[ould] perform." (Id. at 24.) Accordingly, the ALJ concluded that Fagone was not disabled within the meaning of the Social Security Act. (Id.)

Fagone argues that the ALJ committed four errors in his determination of Fagone's residual functional capacity at step four (and upon which the ALJ premised his unfavorable conclusion at step five). He asserts that the ALJ: (1) failed to properly evaluate the opinion of his treating physician; (2) failed to properly evaluate his residual functional capacity; (3) failed to consult a vocational expert to determine the effect of certain of his limitations, including his obesity, on his ability to perform work; and (4) failed to properly evaluate his credibility. (Pl. Mem. at 1.)

### A.   Evaluation of the Opinion of Fagone's Treating Physician

Fagone first argues that the ALJ failed to properly evaluate the opinion of Yekaterina Slukhinsky, M.D., his treating physician. (Id. at 1, 9-14.) He is correct.

A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient

relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotations omitted). Under the SSA's regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion, [ ] that opinion will not be deemed controlling." Snell, 177 F.3d at 133. And in any case, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are therefore never given controlling weight. Id. (internal quotation marks omitted).

Even when an ALJ does not give *controlling* weight to a treating physician's opinion, the ALJ must consider several factors to determine how *much* weight to give the assessment. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must consider: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's

7

opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

Following the onset of his work-related injury, Fagone received medical care from three doctors: Dr. Mario Introna and Dr. James Kaufman (both chiropractors), and Dr. Yekaterina Slukhinsky (board certified in Physical Medicine and Rehabilitation Medicine).[1] (See Rec. at 261, 288, 290.) Dr. Slukhinsky treated Fagone one to two times per week from July 14, 2009, to August 19, 2010. (Id. at 147.) In a report dated August 20, 2010, Dr. Slukhinsky diagnosed Fagone with lumbo-sacral spine derangement, progressive discogenic disease, bulging disc, and chronic radiculopathy. (Id. at 281.) She opined that in an eight-hour work day, Fagone would be capable of sitting for a maximum of one hour, and standing/walking for a maximum of one hour. (Id. at 283.) She further noted that Fagone would never be capable of lifting more than ten pounds, carrying more than five pounds, pushing, kneeling, bending, or stooping. (Id. at 284, 286.)

As indicated above, in order to determine whether the ALJ properly evaluated Dr. Slukhinsky's opinion, the court must first decide whether that opinion was entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2). If not, the court must decide whether the ALJ provided "good reasons" for discounting Dr. Slukhinsky's opinion, Halloran, 362 F.3d at 33, based on the factors set forth in the regulations, see 20 C.F.R. § 404.1527(c)(2).

1. Controlling Weight

Dr. Slukhinsky's opinion was indisputably "well supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). For example, she diagnosed Fagone with progressive discogenic disease on the basis of an MRI examination that

---

[1] It is undisputed that Dr. Slukhinsky qualifies as a treating physician. It is also undisputed that, as chiropractors, Dr. Introna and Dr. Kaufman do not qualify as treating physicians. See 20 C.F.R. § 404.1513(a); see also Diaz v. Shalala, 59 F.3d 307, 312-14 (2d Cir. 1995).

8

revealed several bulging discs. (See Rec. at 291.) Cf. Green-Younger v. Barnhart, 335 F.3d 99, 106-07 (2d Cir. 2003) (treating physician's diagnosis of degenerative disc disease was "well supported by medically acceptable clinical and laboratory diagnostic techniques" where "several MRIs showed some bulging in [the claimant's] discs").

Dr. Slukhinsky's opinion was also consistent with the other evidence in the record, including with the opinions of Drs. Introna and Kaufman, and that of Sujit Chakrabarti, M.D., a physician commissioned by the SSA to review Fagone's medical record. Following an exam in April 2010, Dr. Introna opined that Fagone could sit for a maximum of one hour and stand for a maximum of forty-five minutes, and that he "suffered a permanent total disability" that rendered him "unable to perform any type of work for at least twelve consecutive months." (Rec. at 247.) Echoing these sentiments in September 2010, Dr. Kaufman noted that Fagone had "significant, serious impairments resulting in a total disability," and predicted that Fagone's impairments would "prevent him from . . . being able to perform any occupation . . . for even one uninterrupted hour." (Id. at 289.) And Dr. Chakrabarti observed (after a limited examination) that Fagone was "morbidly obese" and that he needed a "MRI of the lumbar spine to evaluate further [Fagone's] back pain." (Id. at 161.)

There does not appear to be any substantial evidence in the record that is inconsistent with Dr. Slukhinsky's opinion—indeed, the ALJ did not suggest that any existed. The ALJ therefore erred in failing to afford controlling weight to this opinion. See 20 C.F.R. § 404.1527(c)(2); see also Green-Younger 335 F.3d at 106-07; Shaw, 221 F.3d at 134-35.

### 2. Good Reasons

In the alternative, even if Dr. Slukhinsky's opinion had *not* been entitled to controlling weight, the ALJ provided no "good reasons" for discounting her opinion, which in itself would be grounds for remand. Halloran, 362 F.3d at 33; see also 20 C.F.R. § 404.1527(c)(2).

The ALJ first faulted Dr. Slukhinsky for failing to "submit[] any office treatment notations" and for making only "brief references to clinical findings." (Rec. at 22.) That is, at best, a very weak basis for discounting the uncontradicted opinion of a treating physician. A physician may decline to take detailed notes for any number of reasons that in no way call into question the viability of her findings; after all, she may not know—and may have no particular reason to know—"that the ALJ would consider [her opinion] critical to the disposition of [a] case." Clark, 143 F.3d at 118 (treating physician's failure to include "support for the findings in his report [does] not mean that such support does not exist"). In any event, to the extent that Dr. Slukhinsky's opinion failed to reference materials that the ALJ would have "expected" to see (Rec. at 22), the ALJ should have followed up with Dr. Slukhinsky on these matters, not simply tossed her opinion aside. See Schaal, 134 F.3d at 505 (noting that "if the clinical findings [are] inadequate, it [is] the ALJ's duty to seek additional information from [the treating physician]").

The ALJ also discounted Dr. Slukhinsky's opinion because he found it to contain three "inconsistencies." (Rec. at 22.) In reality, there were none.

First, the ALJ found Dr. Slukhinsky's notation that Fagone had been treated with both Vicodin and Flexural to be inconsistent with Fagone's testimony that he was using only Ibuprofen. (Rec. at 22.) But as Fagone explains (see Pl. Mem. at 12-13), the ALJ asked him only what *current* medications he was taking, whereas Dr. Slukhinsky's questionnaire refers to both *current* and *past* medications (see Rec. at 284 (listing "prescribed" medications)).

10

Second, whereas Dr. Slukhinsky reported that Fagone had sustained severe lumbar spinal difficulties since July 10, 2009, Fagone denied any aggravating accident or injury subsequent to October 2003. (Id. at 22-23.) The ALJ found that Fagone's "severe lumbar spinal difficulties" since July 2009 suggested "a second severe injury or accident suffered in July 2009." (Id. at 23.) But surely the fact that Fagone was having spinal *difficulties* in 2009 does not mean that he suffered a separate spinal *injury* that year, and nowhere in her report did Dr. Slukhinsky mention a second severe injury or accident. (Cf. Rec. at 290-91.)

Third, whereas Dr. Slukhinsky noted that Fagone had used a lumbosacral brace, Fagone himself denied the use of such a brace in his testimony. (Id. at 23.) The ALJ yet again conjures an inconsistency from what could simply have been a change over time; Fagone testified only that he was not *presently* using "a cane, brace or crutch to walk" and was not *presently* using "any type of assisted device to walk or stand up" (Rec. at 41), and did not suggest that he had never used a brace in the past.

Thus, even if Dr. Slukhinsky's opinion had not been entitled to controlling weight (and it was, as discussed above), the ALJ provided no good reasons for discounting her opinion, and remand for further proceedings is appropriate. See Halloran, 362 F.3d at 33.

### B.     Other Issues

Fagone raises three other challenges to the decision of the ALJ: (1) the ALJ failed to properly evaluate his residual functional capacity; (2) the ALJ failed to consult a vocational expert to determine the effect of certain of his limitations, including his obesity, on his ability to perform work; and (3) the ALJ failed to properly evaluate his credibility. Each of these analyses was tainted by the ALJ's failure to properly evaluate the opinion of Fagone's treating physician (see Part III.A)—a failure that would naturally have affected how the ALJ viewed the totality of

11

the medical evidence, and thus how he viewed Fagone's residual functional capacity, credibility, and ability to perform work. The ALJ is directed on remand to evaluate the full record in light of a fresh evaluation of Dr. Slukhinsky's opinion. See Sutherland, 322 F. Supp. 2d at 291 (because the ALJ's failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints," the court would "not now consider" plaintiff's argument that the ALJ did not properly consider her complaints).

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, Fagone's cross-motion for judgment on the pleadings is GRANTED, and this case is REMANDED to the Commissioner for a proper evaluation of the opinion of Dr. Slukhinsky and a reevaluation of Fagone's subjective complaints, obesity, and residual functional capacity in light of all the evidence.[2]

SO ORDERED.

Dated: Brooklyn, New York  
February 21, 2013

s/Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge

---

[2] The court does not find that there is unequivocal evidence of disability or that further findings would be unhelpful to assure proper disposition of Fagone's claim; thus, a remand for further proceedings—rather than solely for calculation of benefits—is proper. See Pokorny v. Astrue, No. 09-CV-1694 (NGG) (JO), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010); Pogozelski, 2004 WL 1146059, at *20.